IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MAURECUS ADAMS,

    Plaintiff,

vs.                                                          Case No. 17–cv–0715–DRH

RICHARD HARRINGTON,
KIM BUTLER,
CHRISTI RAYBURS,
RANDY HOPKINS,
SUNEJA,
ROBERT HUGHES,
ZANG,
C. BRADLEY,
SPILLER,
JERRY L WHITTHOFT,
MAJORE HECKINGER,
H. WILSON,
ODISA,
TRACEY LEE,
PETTERSON,
A. WILLS,
R. STEFUN,
ORANGE CRUSH (MENARD) and
JANE DOE,

    Defendants.

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff Maurecus Adams, an inmate in Lawrence Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 that allegedly occurred at Menard Correctional Center. Plaintiff

1

requests declarative relief, a pardon,[1] compensatory damages, punitive damages, and costs. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

>  (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>  (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>    (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>    (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

---

[1] This relief is not available under § 1983.

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; this action is subject to summary dismissal.

**<u>The Complaint</u>**

Plaintiff brought suit on July 7, 2017. (Doc. 1). The suit originally included allegations arising out of Plaintiff's time at Menard, Stateville, and Lawrence Correctional Centers, but on August 25, 2017 the Court severed the claims arising out of conduct at Stateville and Lawrence pursuant to *George v. Smith*, 507 F.3d 605 (7th Cir. 2007). (Doc. 7). This case proceeds as to Plaintiff's claims arising out of his time at Menard Correctional Center alone.

On February 5, 2014, while at Menard, C/O Petterson agreed to whip Plaintiff at the request of other inmates who believed Plaintiff was a snitch.[2] (Doc. 1, p. 7). That same day, Wills gave orders to kill Plaintiff because he said Plaintiff talked too much. *Id.* Nurse Stefun agreed to use Drug S6K and HIV in order to kill Plaintiff; Stefun had allegedly discovered that Drug S6K, when combined with HIV, will cause an allergic reaction resulting in death. (Doc. 1, p. 8). Nurse Rayburs also agreed to issue a report on Plaintiff's death. *Id.* Nurse Hopkins agreed to report Plaintiff's murder as a suicide. *Id.* Plaintiff also believes that "rape was also a weapon to maybe be used to give me HIV," although the Complaint never states he was actually raped. (Doc. 1, pp. 7-8). Lt. Hughes then

---

[2] The Complaint never alleges that Petterson actually "whipped" Plaintiff.

3

came and took Plaintiff to segregation in violation of his 8th Amendment Rights. (Doc. 1, pp. 8-9).

Records attached to the Complaint indicate that Plaintiff engaged in self-harming behavior on February 5, 2014, and was placed on crisis watch. (Doc. 1-1, pp. 14-16).

Dr. Suneja came to Plaintiff's cell on February 10, 2014 to check on the effects of the drug. (Doc. 1, p. 8). Plaintiff complained to him, but nothing was done. *Id.* Plaintiff also complained to Suneja on February 18, 2014, March 23, 2014 and July 28, 2014. *Id.* Plaintiff alleges that Nurse Jane Doe then came to his cell and poked him twice with a small syringe through the bars. (Doc. 1, p. 9). Zang was the gallery officer at this time. *Id.* The porter also gave Plaintiff a juice box containing urine. *Id.* Lt. Bradley, Spiller, Whitthoft, and Heckinger observed the effect of the drug on Plaintiff and forced him out of his cell using the extraction team to see the nurse. (Doc. 1, pp. 9-10). The Menard Orange Crush team maced and extracted Plaintiff from his cell; Plaintiff alleges he refused the order to cuff up out of fear. (Doc. 1, p. 10). The Menard Orange Crush team also took the juice container full of urine. *Id.* Plaintiff was given another juice container by Wilson that contained an electronic transmitter. *Id.* Plaintiff felt the transmitter get caught between his throat and his chest. *Id.* Plaintiff spoke to several officers about the transmitter but they failed to document it. *Id.* Richard Harrington was the Warden of Menard during both the February 5th and 10th incidents. (Doc. 1, p. 11).

On May 28, 2014, Odisa transported Plaintiff from a squad car, which he had been in due to a court writ, to segregation. (Doc. 1, p. 10). Odisa verbally threatened Plaintiff, telling him that he should only ask for help if he didn't remember what happened the last time. (Doc. 1, pp. 10-11).

On April 8, 2015, Lee "called [Plaintiff] out" regarding the grievance he wrote on March 6, 2015 regarding being poisoned. (Doc. 1, p. 11). Plaintiff alleges this violated his 5th, 8th, and 14th Amendment rights. *Id.*

Plaintiff wrote a letter and a grievance that Butler failed to respond to between June 25, 2014 and March 6, 2015. *Id.* Plaintiff left Menard on May 21, 2015. (Doc. 1-1, p. 8).

## Discussion

The Order severing this case found that 7 of Plaintiff's claims arose out of his time at Menard and would proceed in this lawsuit:

**Count 1** – Petterson, Wills, Stefun, Rayburs, Hopkins, Hughes, and Nurse Jane Doe engaged in a plot to poison Plaintiff with Drug S6K and HIV on February 5, 2014 in violation of the Fifth, Eighth, and Fourteenth Amendments;

**Count 2** – Suneja, Zang, Bradley, Spiller, Whitthoft, Heckinger, and Harrington were deliberately indifferent to Plaintiff's infection with Drug S6K and HIV in violation of the Eighth Amendment;

**Count 3** – Orange Crush (Menard) performed an unconstitutional cell extraction on February 10, 2014 while Bradley, Spiller, Whitthoft, and Heckinger watched in violation of the Fifth, Eighth, and Fourteenth Amendments;

**Count 4** – Wilson gave Plaintiff a juice container with an electronic transmitter on February 10, 2014, which Plaintiff ingested, in violation of Plaintiff's Fifth, Eighth, and Fourteenth Amendment Rights;

5

**Count 5** – On May 28, 2014, Odisa transported Plaintiff from a court writ and orally threatened him in violation of his Fifth, Eighth, and Fourteenth Amendment rights;

**Count 6** – Lee asked Plaintiff about a grievance Plaintiff filed to Springfield in violation of Plaintiff's Fifth, Eighth, and Fourteenth Amendment rights on April 8, 2015;

**Count 7** – Butler failed to respond to Plaintiff's June 25, 2014 grievance and subsequent March 6, 2015 grievance in violation of his Fifth, Eighth, and Fourteenth Amendment rights;

All of Plaintiff's claims are subject to dismissal at this time. **Counts 1 and 2** allege that Plaintiff was poisoned with a combination of HIV and another drug, S6K. It is not clear exactly what method was used to allegedly poison Plaintiff—he mentions a juice box full of urine, mysterious injections, and "maybe" rape. In **Count 4**, Plaintiff alleges that he was made to ingest a human electronic transmitter, possibly through another contaminated juice box, and that the transmitter allows the prison to monitor and control his thoughts.

These allegations are factually frivolous and will be dismissed with prejudice. Allegations are factually frivolous where they are "clearly baseless, fanciful, fantastic, delusional, irrational, or wholly incredible." *Felton*, 827 F.3d at 635; *Gladney v. Pendleton Correctional Facility*, 302 F.3d 773, 774-75 (7th Cir. 2002)("[N]o evidentiary hearing is required in a prisoner's case when the factual allegations are incredible. . . A frivolous suit does not engage the jurisdiction of the district court."). The Seventh Circuit upheld a factually frivolous determination in *Gladney* where the prisoner alleged that guards at 3 different prisons unlocked the door of his cell at night, allowing other prisoners to

6

drug and rape him, a circumstance that only came to the plaintiff's attention when he found a lone needle mark under his lip. *Gladney*, 302 F.3d at 774.

This case is similar to *Gladney*. Plaintiff's allegations regarding his alleged poisoning and "chipping" are frankly incredible, and they rest only on his own subjective belief in their truth. Plaintiff has submitted an exhibit from 2015 in which he concedes that he has tested negative for HIV. (Doc. 1-1, p. 1). Likewise, he submitted a report on a chest x-ray stating that there are no foreign objects in his chest. (Doc. 1-1, p. 187). Plaintiff has also been diagnosed by multiple mental health professionals as having delusional disorder. (Doc. 1-1, p. 46-61, 74-186). Plaintiff rejects this diagnosis and claims that the mental health professionals have not done their research. He also claims that the doctor who took the x-ray is either wrong or trying to cover for the Menard officials. Plaintiff has not provided any plausible facts for either of these propositions. The basis for his claims appears to be his own unshakeable faith in his delusions. Plaintiff may believe what he likes, but the Court cannot permit claims based on delusions to proceed. **Counts 1, 2**, and **4** will be dismissed with prejudice as factually frivolous.

Plaintiff also alleges that the Orange Crush Tactical Team performed an unconstitutional cell extraction in **Count 3**, and that other prison officials watched but refused to intervene. The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable

under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). The factors relevant to this determination include: (1) the need for the application of force; (2) the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted).

An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Plaintiff has alleged that he was extracted from his cell and maced. But he has also conceded that he refused to come out of his cell when ordered, which makes it plausible that force was used to legitimately restore discipline. More problematically, Plaintiff has not alleged that he actually suffered any harm or injury as a result of the cell extraction. This makes Plaintiff's claim that the guards used excessive force implausible because Plaintiff has already conceded

8

that he was not following orders at the time of the incident and has not provided any allegations that suggest that the force used was excessive. The lack of harm strongly implies that it was not excessive. Without such allegations, Plaintiff has failed to state claim that would entitle him to relief. **Count 3** will therefore be dismissed.

In **Count 5**, Plaintiff alleges that Odisa verbally threatened him during a routine transport. While distasteful, allegations of verbal harassment typically state no claim under the Eighth Amendment. *Dobbey v. Ill. Dep't of Corrections*, 574 F.3d 443, 446 (7th Cir. 2009). *See also DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws"); *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (reaffirming that limited verbal harassment states no claim, but qualifying that in certain circumstances, verbal harassment may rise to the level of cruel and unusual punishment). Here, Plaintiff has not provided any further allegations that would make it plausible that Odisa's harassment rose to the level of cruel and unusual punishment. Plaintiff has only alleged that Odisa made a lone comment to him, and a fairly vague comment at that. There are no allegations of a pattern or campaign of harassment, or the kind of verbal harassment plus physical harassment that the Seventh Circuit found problematic in *Beal*. Plaintiff has failed to state a claim in **Count 5**.

Plaintiff next alleges that Lee violated his Fifth, Eighth, and Fourteenth Amendment rights when Lee asked him about a grievance he had filed. Conducting an investigation into the merits of a grievance has never been found to violate a prisoner's constitutional rights. Moreover, prisoners have an extremely limited right to refuse to cooperate with internal prison investigations. The only limitation on prison investigation is that prisoners may not be compelled to self-incriminate without immunity. *Caffey v. Maue*, 679 F. App'x 487 490 (7th Cir. 2017); *Riggins v. Walter*, 279 F.3d 422, 430 (7th Cir. 1995). But here, Plaintiff has not alleged that Lee's questions would have forced him to incriminate himself. Plaintiff has also not alleged that he was physically harmed during Lee's questioning or deprived of any liberty interest by the investigation. To the extent that Plaintiff's real issue is that Lee did not come to his preferred conclusion, Plaintiff has no legal interest in any particular outcome of an investigation. On these facts, Plaintiff has not stated a claim in **Count 6**.

Finally, Plaintiff alleges that Butler failed to respond to his grievances in **Count 7**. While sometimes involvement in the grievance process may establish that a defendant was personally involved in the constitutional violation at issue, *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015), the Court has found that Plaintiff's other claims fail to allege constitutional violations, and so the question of whether Butler was involved in those claims is moot. Even if it was not, Butler did not become Warden of Menard until April 2014, further suggesting that there are no grounds to assume she was personally involved in the allegations

in **Counts 1-4**, which all occurred prior to that time.  Butler's failure to respond to grievances in this instance does not appear to establish that she was personally involved in any of the alleged constitutional violations.

If **Count 7** is a claim purely for the failure to respond to grievances, it must be dismissed because there is no constitutional right in the grievance process itself.  Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se.  The alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).  *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).  **Count 7** will be dismissed with prejudice as legally frivolous because Plaintiff has no constitutional legal interest in receiving a response to his grievances.

In the alternative, the Court finds that all of the claims in this lawsuit are barred by the statute of limitations.  Although typically, affirmative defenses such filing after the statute of limitations are litigated by the parties after service, *see Jones v. Bock*, 549 U.S. 199, 212 (2007), a Court may invoke these defenses on § 1915A review when the availability of the defense is apparent on the face of the Complaint.  *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002); *Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir. 1992).

Section 1983 does not contain its own statute of limitations, and so § 1983 claims are governed by the law of the state where the alleged violation occurred. *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001)(citing *Wilson v. Garcia*, 471 U.S. 261. 276 (1985)). In this District, § 1983 claims are governed by Illinois' 2-year statute of limitations. *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008). The Court is also bound to apply a state's tolling rules, and in Illinois, the operation of 735 ILCS 5/13-216 has the effect of tolling the limitation period while a prisoner completes the administrative grievance process. *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012); *Walker v. Sheahan*, 526 F.3d 973, 978 (7th Cir. 2008); *Johnson*, 272 F.3d at 521. The statute is only tolled while the prisoner exhausts his administrative remedies; it is not tolled during the time period between the injury and the start of the administrative remedy process. *Santiago v. Snyder*, 211 F. App'x 478, 480 (7th Cir. 2006) (rejecting plaintiff's argument that he was entitled to 8 more months of tolling to account for the time between his injury and his grievance when he was allegedly pursuing informal remedies).

Inmates confined in the IDOC must adhere to the Department's Grievance Procedures for Offenders in order to properly exhaust claims; anything less is a failure to exhaust. 20 Ill. Adm. Code § 504.810. Prisoners must first speak with their counselor about the issues they raise, and if the dispute is not resolved, a formal grievance must be filed within 60 days of the events or occurrence with the grievance officer. 20 Ill. Adm. Code § 504.810(a). The grievance officer must then

review the grievance and report findings and recommendations to the Chief Administrative Officer ("CAO"). 20 Ill. Adm. Code § 504.830(d). The prisoner then has the opportunity to review the CAO's response, and if unsatisfied, may appeal to the Director through the ARB within 30 days of the Warden's response. 20 Ill. Adm. Code § 504.830(d); 20 Ill. Adm. Code § 504.850. The ARB is then required to provide a written report to the Director of its recommendation on the grievance and the Director "shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances." 20 Ill. Admin. Code § 504.850(e), (f).

Plaintiff alleges that the events at issue occurred on February 5, 2014, February 10, 2014, May 28, 2014, and April 8, 2015. In the section that discusses his exhaustion of legal remedies, Plaintiff points to an October 4, 2016 grievance that he filed at Lawrence Correctional Center, but that grievance is not relevant to the events at Menard. It is attached to the Complaint and a review shows that it relates only to Plaintiff's medical and mental health care at Lawrence Correctional Center.

Plaintiff does not explicitly state that any other grievance exhausted his remedies as to this case, but the Complaint alludes to a several grievances that may be relevant to the Menard events. Plaintiff alleges that he filed a grievance either on March 6, 2014 or March 6, 2015. The Court presumes that the March 6, 2014 date is a typo; Plaintiff states that he filed the March 6th grievance in

13

2014 in paragraph 57 on page 11 of Doc. 1, but in paragraph 59 he says it was filed in 2015, and also blames Butler,[3] not Harrington, for refusing to respond it. In multiple other places, Plaintiff also describes the grievance as being filed in 2015. (Doc. 1-1, p. 1)[4](Doc. 1-1, p. 8) (Doc. 1-1, p. 9) (Doc. 1-1, p. 10) (Doc. 1-1, p. 12) (Doc. 1-1, p. 13). Plaintiff alleges he filed another grievance on June 25, 2014, and that he never got responses to either grievance.[5]

However, just because an inmate does not get a response to a grievance does not mean that he is entitled to indefinite tolling. An inmate may file suit when the grievance process becomes unavailable. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). A transfer between institutions may render the grievance procedure unavailable if the change effectively ends the grievance process. *Flournoy v. Schomig*, 152 F. App'x 535, 538 (7th Cir. 2005); *Westefer v. Snyder*, 422 F.3d 570, 578 (7th Cir. 2005).

Plaintiff's **Count 1** occurred on February 5, 2014. Plaintiff did not file a grievance until June 25, 2014, 144 days later. The statute of limitations ran for 144 days as to that claim. Plaintiff alleges that he never got a response to that grievance and filed a subsequent grievance on March 6, 2015. But then he transferred out of Menard on May 21, 2015. Plaintiff should have considered his

---

[3] Butler became Warden of Menard in April 2014.
[4] Plaintiff essentially repeats the allegations of Paragraph 57 in this instance: that he submitted a March 6th grievance and Tracy Lee investigated it the following month, which further suggests that Paragraph 57 has the typo.
[5] It is highly unlikely that either the June 25, 2014 grievance or the March 6, 2015 grievance were sufficient to exhaust Plaintiff's remedies as the Complaint suggests that both grievances were filed more than 60 days after some of the relevant events and that the proper procedures were not followed, although the Court does not decide that issue here.

remedies exhausted as of that date; he had allegedly not received a response from either grievance despite the passage of a significant amount of time, and he has not alleged that the grievance process was at a stage where it could have continued without a response from Menard staff. Plaintiff should have brought suit within 586 days of his transfer or on or before December 27, 2016. Instead he waited more than 2 years from the date of his transfer and filed it on July 7, 2017. Plaintiff's suit as to Count 1 is untimely.

The same analysis applies to **Counts 3-4**, which occurred a mere 5 days after the events in in **Count 1**. The statute of limitations ran for 139 days between February 10, 2014 and June 25, 2014. It was then tolled due to Plaintiff's grievance activity until Plaintiff's transfer made his remaining remedies unavailable. Plaintiff should have brought suit within 591 days of his transfer or on or before January 1, 2017. Instead he waited 7 months until July 7, 2017. Plaintiff's suit as to **Counts 3-4** is likewise untimely.

**Count 5** is also untimely. That claim accrued on May 28, 2014. Assuming it was included in the June 25, 2014 grievance, the statute of limitations ran for 28 days. Plaintiff's grievance activity then tolled the statute until May 21, 2015, when he was transferred to Lawrence. Plaintiff therefore had 702 days to file suit as to Count 5 before the statute of limitations ran, or on or before April 22, 2017. He filed suit more than 2 and a half months later on July 7, 2017, making his claims in Count 5 too late.

Plaintiff does not appear to be entitled to any tolling as to **Count 6**; the claim accrued on April 8, 2015—after both grievances that Plaintiff allegedly filed as to the Menard conduct had been submitted. Plaintiff does not allege that he ever filed a grievance specifically on the events in Count 6. In that event, Plaintiff should have filed his lawsuit no more than 2 years after the alleged incident or on or before April 8, 2017. Instead he waited until July 7, 2017, nearly 3 months later. Plaintiff's claims in Count 6 are untimely.

As to **Counts 2 and 7**, it is more difficult to tell when precisely those claims accrued. **Counts 2 and 7** allege ongoing courses of conduct. Claims arising under a continuing violation theory of liability accrue on the last day that officials decline to act to avert the constitutional violation, or on the date the inmate left the facility. *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001). Therefore, the latest day that Counts 2 and 7 could have accrued is May 21, 2015. Once Plaintiff left the custody and control of the Menard defendants, his claims against them would not have continued to accrue. And, as any tolling provided by Plaintiff's grievance activity would have also ended May 21, 2015, Plaintiff would have had to bring suit as to those claims no later than May 21, 2017. Instead he waited approximately 7 weeks and filed suit on July 7, 2017—past the statute of limitations. Plaintiff's claims are all barred by the statute of limitations.

### Pending Motions

As this case will be dismissed with prejudice, Plaintiff's Motion for Recruitment of Counsel is **DENIED** as **MOOT**. (Doc. 3).

### Disposition

**IT IS HEREBY ORDERED** that **Counts 1, 2 and 4** are dismissed with prejudice as factually frivolous. **Counts 3 and 5** are dismissed for failure to state a claim upon which relief can be granted. **Counts 6 and 7** are dismissed with prejudice as legally frivolous. Additionally, all counts are barred by the statute of limitations. The Court will accordingly dismiss the case with prejudice, enter judgment, and close the case.

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur a "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R.

APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

Judge Herndon
2017.09.13
06:31:08 -05'00'

**United States District Judge**